IN THE UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION


UNITED STATES OF AMERICA

vs.                                                    4:08cr596/RV
                                                       4:10cv2732/RV/MD


SAMUEL B. KENT

---

## REPORT AND RECOMMENDATION

This matter is before the court upon a motion to vacate, set aside, or correct sentence pursuant to 28 U.S.C. §2255 and memorandum in support thereof (doc. 164 & 165).  The government has filed a response (doc. 167) and the defendant has filed a reply  (doc. 169).  The matter is referred to the undersigned magistrate judge for report and recommendation pursuant to 28 U.S.C. § 636 and N.D. Fla. Loc. R. 72.2(B).  After a careful review of the record and the arguments presented, it is the opinion of the undersigned that defendant has not raised any issue requiring an evidentiary hearing, Rules Governing Section 2255 Cases 8(a) and (b), and that the motion should be denied.


## BACKGROUND

On February 23, 2009, defendant pleaded guilty to a single charge of obstruction of justice in violation of 18 U.S.C. § 1512(c)(2) that was part of a six

count superseding indictment.[1]  His plea took place the morning the trial was to commence.  (PSR ¶ 6).  Defendant executed both a plea agreement and a factual basis for the plea.  (Doc. 117 & 118).  The factual basis for the plea stated that in August 2003 and March 2007 the defendant engaged in non-consensual sexual contact with a deputy clerk assigned to his courtroom, identified as Person A, and that from 2004 through at least 2005, the defendant engaged in non-consensual sexual contact with his secretary, identified as Person B, without her permission. (Doc. 117 at 1-2).  After Person A filed a judicial misconduct complaint, defendant appeared before the Special Investigative Committee of the Fifth Circuit and knowingly testified falsely regarding his unwanted sexual contact with Person B. (Doc. 117 at 2-3).  The defendant agreed that the "Factual Basis for Plea" fairly and accurately described his actions and involvement in the offense to which he pled guilty.  (Doc. 120 at 12-13, PSR ¶ 6, 41).   The defendant's plea agreement set forth the charges and statutory penalties, including the fact that violations of 18 U.S.C. § 1512(c)(2) carried a statutory maximum sentence of twenty years of imprisonment, as well as general information about the sentencing guidelines.  (Doc. 118 at 1-4). The parties also made various stipulations about the application of the sentencing guidelines, including the government's stipulation that it would not seek a sentence in excess of 36 months, although it recognized that the court was not bound by the plea agreement or the stipulations contained therein.  (Doc. 118 at 4-6).   The agreement contained a broad appeal waiver through which defendant waived his right to file a direct appeal or collaterally challenge his conviction and sentence. (Doc. 118 at 6-8). This waiver will be discussed in greater detail below.  The remainder of the agreement addressed defendant's release conditions, the consequences of a breach of the agreement, a waiver of the statute of limitations

---

[1]The other five charges, which were dismissed at sentencing, were Abusive Sexual Contact against Person A, Attempted Aggravated Sexual Abuse against Person A, and Abusive Sexual Contact against Person A, each on a date certain, and Aggravated Sexual Abuse against Person B on one or more occasions, and Abusive Sexual Contact against Person B on one or more occasions, in violation of 18 U.S.C. § 2244(a) and (b).

*Case No: 4:08cr596/RV; 4:10cv2732/RV/MD*

and the fact that the document encompassed the entire agreement between the parties.  (Doc. 118 at 8-11).  Defendant signed his acceptance and counsel Dick DeGuerin signed the attorney acknowledgment (doc. 118 at 12).  After a brief colloquy, the court accepted the defendant's plea of guilty.  (Doc. 120 at 18).

The facts as summarized in the PSR are as follows:

From 2002 through 2007, defendant Samuel B. Kent, a United States District Judge for the Southern District of Texas, repeatedly assaulted both his case manager, Person A, and his secretary, Person B. Person A eventually filed an official complaint with the defendant's fellow judges in May of 2007 and they began an investigation into his conduct. The defendant obstructed their investigation by appearing before a Special Investigative Committee of the United States Court of Appeals for the Fifth Circuit and lying about his assaults on Person A and Person B. The defendant continued to spread this false story during both a December 2007 interview with the FBI and an August 2008 meeting with the FBI and officials from the Department of Justice. On the day he was scheduled for jury selection, the defendant, for the first time, admitted that he engaged in repeated non-consensual sexual contact with both Person A and Person B, and that he falsely represented his conduct regarding Person B to the Fifth Circuit.

(PSR ¶ 14).  The PSR also reflects that before the incidents providing the basis for the charges in counts 1 through 5, the defendant consumed alcoholic beverages during lunch and returned to work, at which point he was acting impaired and aggressive. (PSR ¶ 13) In meeting with the probation officer, defendant denied being an alcoholic, but admitted that he did "stupid, appalling things" while under the influence of alcohol.  (PSR ¶ 104).  He also denied having consumed any alcoholic beverages since March 26, 2007.  (PSR ¶ 104). Counsel's sentencing memorandum, however, emphasized his client's "substantial history of alcohol abuse,"  (doc. 133 at 8), and counsel stated in open court at sentencing that his client was an alcoholic. (Doc. 138 at 58).

Pursuant to the parties' stipulation as contained in the plea agreement, the defendant's base offense level pursuant to U.S.S.G. § 2J1.2 was 14.  (PSR ¶ 7, 56). The probation officer added a three level adjustment because the offense resulted

in the substantial interference with the administration of justice, a two level adjustment for abuse of a position of public or private trust, and another two level adjustment for obstruction of justice. (PSR ¶ 57, 59 & 60). Despite the late date of defendant's plea, the government did not oppose a two level reduction for acceptance of responsibility, provided that the defendant's actions were in accordance with certain conditions enumerated in the plea agreement and recited in the PSR. (Doc. 118 at 4-5; PSR ¶ 7). This adjustment was made, and defendant's total offense level was 19. (PSR ¶ 63 & 66). Defendant had no prior criminal history of any kind and his criminal history category was I. (PSR ¶ 70). The applicable guidelines range according to these calculations was 30-37 months.[2]

Defendant objected to the two level increase for Obstruction of Justice, the three level increase for substantial interference with the administration of justice and the two level adjustment for abuse of a position of public or private trust (PSR ¶¶ 149-188). The government objected to the lack of a two level adjustment for extensive scope, planning or preparation (PSR ¶¶193-202), it argued that the defendant had failed to truly accept responsibility for his actions (PSR ¶¶ 203-221), and it objected to the offense level computation based on these objections. (PSR ¶¶ 222-224). All of the objections were overruled at sentencing. (Doc. 138).

Before imposing sentence, the sentencing judge noted that imposing sentence is the most difficult thing that a court has to do. It specifically noted that it reviews every aspect of each defendant's case carefully and completely, and in this case the court had spent "many hours, in fact, going over all the tons of material it seems like that have been submitted in this case." (Doc. 138 at 69). The court found the PSR to be accurate, subject to the corrections that had been made. (*Id.*) It acknowledged defendant's significant personal and professional accomplishments, while noting that the defendant's wrongful conduct was a "huge black X" on his

---

[2]The government also agreed pursuant to the terms of the plea agreement that it would not seek a sentence greater than 36 months, a sentence that fell within the applicable guidelines range. (PSR ¶ 7, 130).

record, a "smear on the legal profession" and a "stain on the justice system itself." (*Id.* at 70).  The court recognized its duty to fairly apply the law and to ensure that the defendant was given neither preferential nor overly harsh or improper treatment because of his status as a former federal judge.  (*Id.*)   It then sentenced him to a term of 33 months imprisonment.  (*Id.* at 71).

The court indicated that it had considered all the factors set forth in 18 U.S.C. 3553(a),[3] and specifically identified its consideration of the nature and circumstances of the offense, the defendant's history and characteristics, the need for the sentence imposed to reflect the seriousness of the offense, to promote respect for the law, to provide just punishment, to afford deterrence to protect the public and to provide medical care or other treatment to the defendant.  (Doc. 138 at 71-72).  The court noted that it had used the sentencing guidelines only as advisory.  (*Id.* at 72).  With respect to defendant's substance abuse, the court commented:

> You personally have a family history and a personal history of alcohol abuse, so, therefore, while incarcerated, you will participate in the Bureau of Prisons' residential drug abuse program, *or* such similar program offered for the treatment of substance and specifically alcohol abuse that may be offered at the institution where you are located as deemed eligible by the Bureau of Prisons.

(Doc. 138 at 72, emphasis added).

The court allowed the defendant to voluntarily surrender either at the courthouse or to the place of confinement designated by the Bureau of Prisons, if one had been selected.  (*Id.* at 76).  It acknowledged that the defendant's status as a former federal judge could implicate some additional concerns with the BOP, but in lieu of setting a later surrender date instructed the parties to file a motion if there was a problem. (*Id.* at 76-77).  The court stated that it would recommend that the defendant be designated to an institution with a good medical facility and a mental health facility, in addition to its recommendation with respect to the abuse program.

---

[3]The transcript refers to "Section 53a" which is an obvious transcription error. (Doc. 138 at 71).

(*Id.* at 77).  The court did not offer any indication that its sentence was contingent upon any specific BOP action.

## DEFENDANT'S § 2255 MOTION

Collateral review is not a substitute for direct appeal, and therefore the grounds for collateral attack on final judgments pursuant to § 2255 are extremely limited.  A prisoner is entitled to relief under section 2255 if the court imposed a sentence that (1) violated the Constitution or laws of the United States, (2) exceeded its jurisdiction, (3) exceeded the maximum authorized by law or (4) is otherwise subject to collateral attack.  28 U.S.C. § 2255; *United States v. Cates*, 952 F.2d 149, 151 (5th Cir.), cert. denied, 504 U.S. 962, 112 S.Ct. 2319, 119 L.Ed.2d 238 (1992) (citing *Hill v. United States*, 368 U.S. 424, 427-28 & n. 5, 82 S.Ct. 468, 470-71 & n. 5, 7 L.Ed.2d 417 (1962)).  Relief under 28 U.S.C. § 2255 is limited to situations involving "transgressions of constitutional rights and for that narrow compass of other injury that could not have been raised in direct appeal and would, if condoned, result in a complete miscarriage of justice.'"  *United States v. Guerra*, 94 F.3d 989, 995 (5th Cir. 1996) (citations omitted). The "fundamental miscarriage of justice" exception recognized in *Murray v. Carrier*, 477 U.S. 478, 496, 106 S. Ct. 2678, 2649, 91 L. Ed. 2d 397 (1986), provides that it must be shown that the alleged constitutional violation "has probably resulted in the conviction of one who is actually innocent. . . ."

The claims presented by the defendant in this case are unusual ones.  In his motion, he asserted (1) that the BOP has ignored the court's "intended sentence" by denying his admission into the Residential Drug Abuse Program (RDAP) and classifying him as a sex offender; (2) that he had been subjected to "abusive psychological and physical conditions," and (3) that his sentence violated due process.  Defendant presented significant detail about the treatment he claims he had been made to endure during the initial phases of his confinement.  He indicated that he had spent 58 days in solitary confinement for non-disciplinary reasons and had been in transit for an inordinate amount of time.  He also complained about the

treatment he received from Corrections Officers within the Florida Department of Corrections ("FDOC"). [4]  He suggested that this "inhumane" treatment was largely due to lack of BOP oversight. (Doc. 164 at 4).  He then complained that the BOP's decision to classify him as a sex offender and apply the concomitant restrictions was "arbitrary and capricious."   He also maintained that the BOP's denial of admission to its RDAP was  "arbitrary," and attacked the rationality of BOP Program Statement 5330.11 which rendered him ineligible for admission due to the period of sobriety preceding his arrest.  The BOP "enforced an arbitrary bureaucratic rule that has produced an absurd result when applied to Sam Kent," according to the defendant. (Doc. 164 at 7).   Ultimately, he claimed that the sentencing court made "objectively ascertainable errors" at the time of sentencing because it sentenced him based on a mistaken belief about how the defendant's sentence would be carried out, and as such his sentence violated Due Process.  As relief, defendant requested that the court vacate and "correct" his sentence giving consideration to the facts that (1) he is not eligible for the RDAP and any corresponding sentence credit, (2) the BOP has imposed "unreasonable restrictions" on him due to his sex offender classification, and (3) he has spent significant time in solitary confinement and allegedly suffered mistreatment by the BOP and FDOC.  He specifically states that he does not want to return to BOP custody. (Doc. 164 at 7).

        In response to defendant's motion, the government argues that all of the claims raised are either procedurally barred because they are either civil rights claims or foreclosed by the plea agreement, which included a waiver of appeals and collateral attacks.

        In rebuttal, defendant emphasizes that he is not complaining about conditions of confinement at his current custodial facility, which appear to be satisfactory.  He maintains that he "properly articulates a long series of problems from the time of his

---

[4]The defendant, who is a former federal judge from Texas, is currently in the custody of the Florida Department of Corrections to maximize his safety by minimizing custodial contact with any defendants he may have sentenced.

arrival at the BOP's Devens facility through the time he spent at the Florida Department of Corrections' Lake Butler Reception Center." (Doc. 169 at 2, n. 1). According to the defendant, these events, rather than providing the basis for a civil rights claim, "are realities that, if known at the time of sentencing, would have caused the Court to sentence [him] differently." Otherwise stated, defendant asserts that had the district court anticipated the hardships he claims he endured,[5] it would have administered a lesser sentence. He also argues that enforcement of the explicit appeal waiver would disserve the interests of justice.

Waiver

As an initial matter the court notes that the waiver provision contained in the defendant's plea agreement is not mentioned in the memorandum in support of his § 2255. The detailed waiver states as follows:

> The defendant is aware that the defendant has the right to challenge the defendant's sentence and guilty plea on direct appeal. The defendant is also aware that the defendant may, in some circumstances, be able to argue that the defendant's guilty plea should be set aside, or sentence set aside or reduced, in a collateral challenge (such as pursuant to a motion under 28 U.S.C. § 2255). Knowing that, and in consideration of the concessions made by the United States in this Agreement, the defendant knowingly and voluntarily waives his right to appeal or collaterally challenge: (a) the defendant's guilty plea and any other aspect of the defendant's conviction, including, but not limited to, any rulings on pretrial suppression motions or any other pretrial dispositions of motions and issues; and (b) the defendant's sentence or the manner in which [his/her] sentence was determined pursuant to 18 U.S.C. § 3742, except to the extent that the Court sentences the defendant to a period of imprisonment longer than the statutory maximum, or the Court departs upward from the applicable Sentencing Guideline range pursuant to the provisions of U.S.S.G. § 5K2 or based

---

[5]A claim that a prisoner endured conditions of confinement that violated the Eighth Amendment of the United States Constitution is actionable under 42 U.S.C. § 1983 or 28 U.S.C. § 1331 and *Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics*, 403 U.S. 388, 91 S.Ct. 1999, 29 L.Ed.2d 619 (1971) even after the allegedly unconstitutional conduct has ended if commenced within the proscribed limitations period.

on a consideration of the sentencing factors set forth in 18 U.S.C. § 3553(a).

(Doc. 118 at 7).[6]

Defendant received the benefit of his plea bargain.  In exchange for his plea of guilty to a single count of the indictment the government dropped five charges against him.  The government asserts, not unreasonably, that defendant now seeks to renegotiate the terms of this bargain to avoid the consequences of the waiver, and that the instant motion is procedurally barred.  *See e.g, United States v. Wilkes*, 20 F.3d 651 (5th Cir. 1994) (upholding a defendant's knowing and voluntary waiver of his § 2255 rights); *United States v. McKinney*, 406 F.3d 744 (5th Cir. 2005) (upholding a defendant's waiver of his appellate rights); *United States v. Melancon,* 972 F.2d 566, 568 (1992) (same); see also *United States v. Pipitone*, 67 F.3d 34, 39 (2nd Cir. N.Y. 1995)(finding appeal waiver also encompassed the right to bring a § 2255 motion, despite the arguable existence of objectively ascertainable error). While apparently recognizing the inherent validity of such a waiver, the defendant asserts in his reply that the court should disregard the appeal waiver because to do otherwise would disserve the interests of justice and allow the BOP to usurp the sentencing court's constitutional and statutory sentencing authority.

Defendant takes the position that the BOP has usurped the Court's constitutional authority by administering his sentence "in a manner materially different from what the sentencing Court reasonably contemplated." (Doc. 169 at 4). This alleged usurpation presumably took place in the form of the treatment defendant has experienced since his confinement, including the BOP's denial of his admission to the RDAP.  Defendant also argues that dismissal on the grounds of waiver would result in a "miscarriage of justice" because, "had the objectionable attributes of [his] sentence (as administered by the BOP) been specifically imposed

---

[6]It appears from the uncorrected  inclusion of "[his/her]" in the waiver, that this is the standard waiver language used in the Fifth District and was not corrected to reflect the defendant's gender.

by the Court at the time of sentencing, the sentence would have been substantively unreasonable under § 3553." (Doc. 169 at 5).  Again, the "attributes" to which he refers include the allegedly arbitrary and unconstitutional treatment he has endured.

The government, the court, the public, and criminal defendants have legitimate interests in the integrity of the plea bargaining process and in the finality of sentences thus imposed. See *Town of Newton v. Rumery*, 480 U.S. 386, 393 n. 3, 107 S.Ct. 1187, 1192 n. 3, 94 L.Ed.2d 405 (1987) (describing benefits of plea agreements); *United States v. Navarro-Botello*, 912 F.2d 318, 321-22 (9th Cir. 1990) (discussing compelling public policy concerns underlying plea agreements), cert. denied, 503 U.S. 942, 112 S.Ct. 1488, 117 L.Ed.2d 629 (1992).  Every circuit that has considered enforcement of appellate waivers enforces such waivers in at least some form.  See e.g. *United States v. Teeter*, 257 F.3d 14, 21-27 (1st Cir. 2001); *United States v. Hernandez*, 242 F.3d 110, 113-14 (2nd Cir. 2001); *United States v. Khattak*, 273 F.3d 557, 559-63 (3rd Cir. 2001); *United States v. Brown*, 232 F.3d 399, 402-06 (4th Cir. 2000); *United States v. Melancon*, 972 F.2d 566, 567 (5th Cir. 1992); *United States v. Fleming*, 239 F.3d 761, 764 (6th Cir. 2001); *United States v. Jemison*, 237 F.3d 911, 916-18 (7th Cir. 2001); *United States v. Andis*, 333 F.3d 886, 889 (8th Cir. 2003) (en banc); *United States v. Nguyen*, 235 F.3d 1179, 1182-84 (9th Cir. 2000); *United States v. Howle*, 166 F.3d 1166, 1168-69 (11th Cir. 1999) (cases collected by *United States v. Hahn*, 359 F.3d 1315, 1324 n.10 (10th Cir. 2004)).  The defendant relies on two cases for the proposition that an appeal waiver will not be enforced when to do so would result in a "miscarriage of justice." *United States v. Andis*, 333 F.3d 886, 891-892 (8th Cir. 2003); *United States v. Hahn*, 359 F.3d 1315, 1327 (10th Cir. 2004).  These courts recognized that as a general rule most appeal waivers are valid, but identified the miscarriage of justice exception as potentially encompassing the appeal of an illegal sentence (ie. in excess of the statutory maximum); a sentence in violation of the terms of the plea agreement; a sentence based on a constitutionally impermissible factor such as race; or a claim asserting ineffective assistance of counsel. *Hahn*, 359 F.3d at 1327; *Andis* 333 F.3d at 892.  The illegal sentence exception is extremely

narrow, and any sentence imposed within the statutory range is not subject to appeal. *Andis*, 333 F.3d at 892.  The *Hahn* court noted, however, that the waiver may also be "otherwise unlawful" if the error seriously affects "the fairness, integrity or public reputation of judicial proceedings" as described in *United States v. Olano*, 507 U.S. 725, 732, 113 S.Ct. 1770, 123 L.Ed.2d 508 (1993).  *Hahn*, 359 F.3d at 1327. Even so, something as serious as the court's misapprehension of the law at sentencing does not necessarily exempt an otherwise valid waiver from being enforced.   See *United States v. Pipitone*, 67 F.3d 34, 39 (2nd Cir. 1995).

The bases for the defendant's claim that he should be relieved from the application of his knowing and voluntary appellate waiver are weak, particularly when the substantive merits of his position are scrutinized.   As will also be noted below, there are procedurally preferable avenues of relief for the wrongs defendant claims he has suffered.

Defendant's substantive claims for relief

Defendant's claim that the allegedly harsh conditions of confinement he has endured entitles him to post-conviction relief in the form of reconsideration of his sentence is certainly novel.   But a creative argument is not tantamount to a successful one. The conditions of defendant's confinement since his sentencing, if indeed they are as he portrays,[7] are unfortunate.  However, defendant has cited no authority for his suggestion that harsh or even constitutionally impermissible post-sentencing treatment provides a legal basis to re-open the defendant's federal sentencing proceeding.  His attempt to couch this portion of his claim in terms of "objectively ascertainable error" at the time of sentencing is misguided.  The sentencing court cannot be expected to divine future confinement conditions that could thus provide a basis for the nuances of its sentencing decisions.  And on the

---

[7]Defendant's claims regarding his conditions of confinement have been investigated by state and federal officials, and in each instance the allegations of mistreatment were deemed unfounded (See doc. 167, exh. 1, 2 & 3, letters from letters from DOJ, BOP and FDOC officials, respectively).

other hand, if every defendant were permitted to collaterally challenge his or her sentence based upon untested allegations of mistreatment, which is essentially what have been presented here, the floodgates of prisoner litigation would not only be opened, but would come off their hinges. If defendant believes that he has been treated arbitrarily, unfairly and inhumanely, he is not precluded from either filing a civil rights claim or a petition for habeas corpus pursuant to 28 U.S.C. § 2241 to challenge the execution, rather than the validity of, his sentence.

The same argument, that the district court committed "objectively ascertainable error," as applied to the defendant's eligibility for the RDAP program is not as easily dismissed.  Defendant claims that the BOP's allegedly "arbitrary" decision to deny him participation in the RDAP, (or more accurately stated, the fact that he was denied participation in RDAP), provides a basis for re-opening his sentence.[8]

Defendant acknowledges that the sentencing court has no enforceable expectations regarding the BOP's discretion.  *See United State v. Addonizio*, 442 U.S. 178, 190, 99 S.Ct. 2235 (1979) (sentencing judge's reliance on an inaccurate prediction concerning an agency's discretion in executing a sentence will not invalidate the sentence); *see also United States v. Delario*, 120 F.3d 580, 582 (5th Cir. 1997).  *Addonizio* dealt with the defendant's future parole eligibility, and the sentencing judge's "frustrated expectations" that the defendant would be eligible for parole.  In *Addonizio*, the Parole Commission changed its policies after the defendant was sentenced, and because of these changes the defendant was subsequently denied parole.  The Supreme Court held that a sentencing court's mistaken belief about future Parole Commission practices is insufficient to warrant § 2255 relief.  *Addonizio,* 442 U.S. at 180-183*; see also United States v. Delario*, 120

---

[8]Defendant classifies this decision as "arbitrary," while admitting that BOP Program Statement 5330.11 "renders him ineligible for RDAP." (Doc. 164 at 6).  Defendant makes a strong case that the P.S. 5330.11 necessarily disqualifies from participation some individuals who might benefit from the RDAP. However, neither the wisdom nor the logic behind P.S. 5330.11 is properly at issue in this case.

F.3d 580, 582 (5th Cir. 1997) (following *Addonizio*)*; Kills Crow v.United States,* 555 F.2d 183, 187-88 (8th Cir. 1977) (same). The Court found "no basis for enlarging the grounds for collateral attack to include claims based not on any objectively ascertainable error but on the frustration of the subjective intent of the sentencing judge." *Addonizio,* 442 U.S. at 187, 99 S.Ct. at 2241.

As recognized by the Supreme Court, there is a clear distinction between a "frustrated expectation" such as that which occurred in both *Addonizio* and the situation presented to the Fifth Circuit in *Delario,* and a "mistake of law," which is what defendant alleges happened in this case.  This distinction was discussed at length in *United States v. Eakman,* 378 F.3d 294 (3rd Cir. 2004) where the Third Circuit reviewed the appeal of the denial of a §2255 motion.  In *Eakman* the defendant's challenge to his sentence centered around his eligibility for community confinement center ("CCC") placement and how this factored into his sentencing.  The appellate court explained that if the defendant had alleged that the district judge "expected" the BOP to exercise its discretion to require defendant to serve his sentence at a CCC but the BOP did not conform to that expectation, defendant's motion would have been subject to dismissal under *Addonizio. Eakman,* 378 F.3d at 300.  Instead, the defendant's claim was actually that the district judge erroneously believed the BOP could lawfully place him in a CCC, when in fact it did not have legal authority to do so.  *Id.*  Because there was no legal possibility at the time of sentencing that defendant could have been placed in a CCC, defendant asserted that the district court made an error of law that could be ascertained from the record.  *Id.*  The Third Circuit remanded for a hearing to determine whether the judge relied upon a mistaken belief about the BOP's discretionary authority in fashioning defendant's sentence.[9]  Such reliance would have resulted in a due process violation.

---

[9]The Third Circuit noted that because the record did not conclusively show that the defendant was entitled to no relief, section 2255 "expressly compels a hearing to determine whether the judge in fact relied upon his mistaken belief that the Bureau had the discretionary authority to assign [the defendant] to a community confinement center."  378 F.3d at 303.  Requiring the sentencing judge to hold a hearing to "determine" whether the sentence he imposed was a result of mistaken reliance appears awkward, but that

Similarly, in *King v. Hoke*, 825 F.2d 720 (2nd Cir. 1987) the Second Circuit found that the defendant was deprived of due process at sentencing when the trial court "plainly had an incorrect view of the applicable parole law just one month before sentencing, a view he held with sufficient certainty to inform the jury." 825 F.2d at 724. The *King* court contrasted the facts before it with those presented in *Addonnizio*, noting that *Addonizio* involved a prediction about how the Parole Commission would exercise its discretion, whereas *King* involved an "objectively ascertainable error" at sentencing about a matter of law: the defendant's minimum statutory parole eligibility date. *King*, 825 F.2d at 725. The court also noted that in order for a sentence to be unconstitutional, actual reliance on the erroneous information need not be shown. *King*, 825 F.2d at 724 (citing *McGee v. United States*, 462 F.2d 243, 246 (2nd Cir. 1972) (setting aside a sentence after concluding that sentencing judge's reliance on an improper factor was "quite probable.")

Defendant also points the court to *United States v. Hollenbeck*, 932 F.Supp. 53 (N.D.N.Y. 1996). In *Hollenbeck*, the defendant successfully moved for modification of his sentence, and his revised guideline range was 15 to 21 months. *Id.* at 55. The trial court had sentenced defendant at the bottom of the initial guidelines range and indicated its inclination to resentence him to the bottom of the recalculated range. *Id.* Because the court was concerned about defendant's ability to participate in the RDAP, it consulted with the BOP about defendant's eligibility for the program. *Id.* The BOP advised the court that in order for the defendant to have time to participate in RDAP, he would have to be resentenced at the top of the new range. *Id.* The court therefore reduced defendant's sentence from the bottom of the previously applicable range to the top of the revised range, from 46 to 21 months. *Id.* In so doing, the court specifically mentioned its intent for the defendant to undergo the drug treatment program to rehabilitate him as well as to protect society from any future crimes. *Id.* at 55-56. Unfortunately, after resentencing, when

---

is what was ordered by the appellate court.

defendant submitted a request to participate in RDAP, he was told that he did not have enough time remaining in his sentence to participate in the program.  He thus re-petitioned the court for a further reduction, arguing that the court would have sentenced him at the bottom of the new range but for its stated intent to allow him sufficient time to complete the RDAP.  *Id.* at 56.  The court construed defendant's motion as a § 2255 motion, and found that his sentence violated due process because it was "demonstrably obvious that the court relied wholly on erroneous information in resentencing defendant to 21 instead of 15 months."  *Id.* at 57.

The *Hollenback* court noted that the fact that the BOP retains discretion in the administration of the RDAP was not fatal to the defendant's case.  The court noted that:

> The Bureau did not accurately inform the court that 21 months would be sufficient, then later determine that defendant was unfit for the Program.  Nor did it later transpire that there was no room for defendant.  What did happen was that the Bureau's information proved to be materially false at the time of sentencing.  Notwithstanding any discretion the Bureau exercises, defendant is entitled to be sentenced, or resentenced, based on accurate information.

*Hollenbeck*, 932 F. Supp. at 58.  The defendant was thus resentenced to a term of 15 months, at the bottom of the revised guideline range.

Defendant argues in the case before this court  that:

> The Court was led to forego any further reductions (including but not limited to downward departures) in order to sentence Sam Kent to a term of months sufficient to absorb a potential 12-month reduction for RDAP participation while still providing a custodial term sufficient to satisfy § 3553.

(Doc. 164 at 9 n.4)  Obviously, the undersigned was not present at sentencing.  However, this court has carefully reviewed the sentencing transcript, and it finds no factual support for defendant's assertion that the sentencing court made any adjustment to the defendant's sentence to absorb the potential 12 month reduction in sentence that could accompany successful completion of the RDAP.  Unlike in

***Hollenbeck, supra***, there is no record indication that the district court in this case would have imposed a different sentence absent the "error."  The district court directed the defendant to

> participate in the Bureau of Prisons' residential drug abuse program, or such similar program offered for the treatment of substance and specifically alcohol abuse that may be offered at the institution where you are located as deemed eligible by the Bureau of Prisons.

(Doc. 138 at 72).  This statement recognized the BOP's final authority to determine the defendant's eligibility for the program and contained an implied recognition of the BOP as arbiter of custodial decisions.  The court at no time mentioned any expectation or understanding that the defendant's sentence would be reduced for such participation. Defendant's suggestion otherwise reads more into the record than is actually there.[10] If in fact the sentencing judge privately held such a belief but did not articulate his reliance on it, reconsideration of defendant's sentence would be appropriate. This does not appear warranted from the record, and this court can not infer meaning when none is there.

In conclusion, the court finds that the defendant has not established grounds for disregarding the explicit waiver contained in his plea agreement, but even if he had, he has not established any substantive basis for relief from the sentence imposed.

### III.  Certificate of Appealability

As amended effective December 1, 2009, § 2255 Rule 11(a) provides that "[t]he district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant," and if a certificate is issued "the court must state the specific issue or issues that satisfy the showing required by 28 U.S.C. § 2253(c)(2)."

---

[10]Furthermore, the mere fact that an individual begins or has the opportunity to begin the program is no guarantee that he will successfully complete it.

*Case No: 4:08cr596/RV; 4:10cv2732/RV/MD*

A timely notice of appeal must still be filed, even if the court issues a certificate of appealability.  § 2255 11(b).

After review of the record, the court finds no substantial showing of the denial of a constitutional right.  § 2253(c)(2); *Slack v. McDaniel*, 529 U.S. 473, 483-84, 120 S.Ct. 1595, 1603-04, 146 L.Ed.2d 542 (2000) (explaining how to satisfy this showing) (citation omitted).  Therefore, it is also recommended that the court deny a certificate of appealability in its final order.

The second sentence of  new Rule 11(a) provides: "Before entering the final order, the court may direct the parties to submit arguments on whether a certificate should issue."  If there is an objection to this recommendation by either party, that party may bring this argument to the attention of the district judge in the objections permitted to this report and recommendation.

Based on the foregoing, it is respectfully RECOMMENDED that:

The motion to vacate, set aside, or correct sentence (doc. 165)  be DENIED.

In the event of an appeal, a certificate of appealability be DENIED.

At Pensacola, Florida, this 20th day of October, 2010.

/s/ *Miles Davis*

**MILES DAVIS**
**UNITED STATES MAGISTRATE JUDGE**

## NOTICE TO THE PARTIES

Any objections to these proposed findings and recommendations must be filed within fourteen days after being served a copy thereof.  Any different deadline that may appear on the electronic docket is for the court's internal use only, and does not control.  A copy of objections shall be served upon all other parties.  Failure to object may limit the scope of appellate review of factual findings. See 28 U.S.C. § 636; *United States v. Roberts*, 858 F.2d 698, 701 (11th Cir. 1988).